**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARLENE HALE and** | ) | |
| **TRONEEKO FRENCH** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 5131** |
| | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **PACE, CDT, MICHAEL ROGERS,** | ) | |
| **DISPATCHER 1, STAFF 1, DRIVER 2,** | ) | |
| **DISPATCHER 2, SCR, and STAFF 2** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Darlene Hale and Troneeko French have sued Pace, CDT Transportation ("CDT"),

Michael Rogers, Staff 1, SCR Transportation ("SCR"), Driver 2, Dispatcher 2 and Staff 2 for

violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131(A)-(B),

§ 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, 42 U.S.C. §§

1983, 1985, as well as violations of state law, including claims of false imprisonment, intentional

infliction of emotional distress, defamation, negligent hiring, training and supervision and breach

of contract. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure

("Rule") 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part the

motion.

<u>**Facts**</u>

Defendant Pace is a suburban bus agency that provides "paratransit services" in the city of Chicago to disabled passengers who have difficulty riding regular public transportation. (Second Am. Compl. ¶ 1.)  Pace contracts with defendant CDT, a private carrier, to provide paratransit service to parts of the City of Chicago on Pace's behalf.  (*Id.* ¶ 2.)  At all times relevant to the complaint, defendants Michael Rogers, Dispatcher 1 and Staff 1 were employees of CDT.  (*Id.* ¶ 3.)  Pace also contracts with defendant SCR, another private carrier, to provide paratransit service to other parts of the City of Chicago on Pace's behalf.  (*Id.* ¶ 70.)  Driver 2, Dispatcher 2 and Staff 2 are or were employees of SCR.  (*Id.* ¶ 71.)

Plaintiff French is a severely disabled adult, who has been deemed eligible to use paratransit services.  (*Id.* ¶ 10.)  Plaintiff Hale is French's mother, legal guardian and caregiver. (*Id.* ¶ 9.)  As French's mother and caregiver, Hale has frequently traveled with French on Pace's paratransit service as his "Personal Care Assistant" ("PCA").  (*Id.* ¶ 11.)

On August 25, 2007, plaintiffs were riding Pace paratransit with Rogers as their driver. (*Id.* ¶¶ 20, 21.)  During the ride, Rogers demanded that Hale pay a fare and threatened to "put them out of the car by the side of the road if they did not comply."  (*Id.* ¶¶ 20-22.)  Hale complied with the demand and paid two fares, but she felt that Rogers' demand was improper because she believed that Pace's procedure dictated that a PCA accompanying a disabled individual did not have to pay a fare.  (*Id.* ¶¶ 23-24.)  Plaintiffs do not base any of their claims on the August 25, 2007 incident.

Hale called Pace twice and complained to a Pace official.  (*Id.* ¶ 33.)  Hale also discussed the incident in person with Melinda Metzger, Pace's Deputy Executive Director, and Tom

Groeninger, Pace's Regional Manager for Paratransit, at a meeting. (*Id.* ¶¶ 28, 31.) Metzger advised Hale that: (1) French's file should be "PCA-coded," meaning that he is on record as someone who always rides with a PCA, (2) such information should have been available to the drivers and dispatchers and (3) she should not have been charged a fare. (*Id.* ¶¶ 29-30.) Metzger also told Hale that even if a driver were to call the police in a similar situation, Hale would "come out as having acted correctly in declining to pay two fares (rather than just one)." (*Id.* ¶ 32.)

Another incident occurred on November 23, 2007. (*Id.* ¶ 12.) At about 1:30 a.m., plaintiffs boarded a paratransit vehicle driven by Michael Rogers, operated by CDT and under contract to Pace. (*Id.* ¶¶ 12, 16.) After driving several blocks, Rogers told the plaintiffs, "You know how it goes. You was in the car with me before. You're gonna give me double fare, or I'm gonna take you out to the coldest part of Chicago and I'm gonna put you and your son out." (*Id.* ¶¶ 18-19.) During the course of this incident, Rogers communicated with Dispatcher 1 and other personnel who approved his actions. (*Id.* ¶ 39.) After Rogers referenced the August 25 incident and demanded that she pay two fares, Hale recalled the advice she had been given by Metzger and refused to pay a second fare, stating, "You can take us back where we were." (*Id.* ¶¶ 34-35.) Instead of taking Hale and French back to their starting point of 356 West 95th Street, Rogers instead drove them to the vicinity of 95th Street and Dan Ryan, a location where the plaintiffs did not know anyone. (*Id.* ¶¶ 12, 36, 38.) Rogers stopped the car, turned off the heat and lights and called the police. (*Id.* ¶¶ 36, 40.)

When the police arrived at the scene, Rogers told the officer that the plaintiffs were not willing to pay any fare. (*Id.* ¶ 41.) Hale responded by informing the officer that she was willing

to pay one fare but that she refused to overpay. (*Id.* ¶ 42.) The police declined to take any action against the plaintiffs and drove them home. (*Id.* ¶ 53.)

On December 19, 2008, plaintiffs Hale and French again attempted to use Pace's paratransit services. (*Id.* ¶ 75.)[1] As plaintiffs approached the Pace vehicle, Driver 2 locked the doors and "called in" plaintiffs as "no shows." (*Id.* ¶ 79.) Hale subsequently called the Pace control center to resolve the problem. (*Id.* ¶ 80.) Driver 2 spoke to the plaintiffs, saying, "Bitch, I'm not taking your retarded ass son nowhere. Don't nobody like y'all that's why SCR and Pace trying to get you kicked off the service, cause don't nobody like you." (*Id.* ¶ 81.) Driver 2 also stated that other paratransit workers, drivers and dispatchers would support his version of the event. (*Id.* ¶ 82.) Ultimately, Driver 2 allowed plaintiffs to board the vehicle, but Driver 2 continued to use "profane and disparaging language toward them," including calling Hale "bitch" approximately ten to fifteen times, and refused to move the vehicle for ten to fifteen minutes. (*Id.* ¶¶ 83-84.)

Hale took exception to being addressed as "bitch" and argued with Driver 2 that it was not right for him to refuse service. (*Id.* ¶ 86.) Driver 2 contacted the dispatcher and requested that another vehicle be sent because Hale was "directing profane language at him." (*Id.* ¶ 87.) After Hale challenged Driver 2 to report what he had said to her and turn on the vehicle's camera, he refused to do so. (*Id.* ¶¶ 88-89.) Driver 2 eventually took plaintiffs to their destination, and Hale paid one fare for French. (*Id.* ¶¶ 91-92.) Following this incident, and on the advice of her physician, Hale has reduced the frequency with which she utilizes paratransit to

---

[1] On the same day as this incident, Pace received a summons and a copy of the complaint that plaintiffs had filed against Pace and other parties in the Circuit Court of Cook County on November 24, 2008.

travel with her son, but due to her son's condition, she continues to "utilize paratransit from time to time." (*Id.* ¶ 160.)

On February 4, 2009, Hale attended a Pace Board of Directors meeting where she expressed pointed criticism of the administrators of Pace paratransit. (*Id.* ¶¶ 94-95.) On a date not specified in the complaint, Pace told Hale that her ridership privileges were going to be suspended and subsequently conducted a telephonic hearing with Hale regarding her suspension from ridership. (*Id.* ¶ 97.) Thomas Ciecko, Pace's general counsel, participated in the hearing and also represented Pace in the suit filed by the plaintiffs. (*Id.* ¶ 98.) Ciecko rejected Hale's request to move the hearing to another day because French had had a seizure as well as her attempt to present a defense regarding Driver 2's behavior. (*Id.* ¶¶ 98-99.) On February 5, 2009, Pace sent a letter to Hale informing her that based on the December 19 episode, she would be "suspended" from utilizing Pace paratransit from February 9, 2009 through March 25, 2009. (*Id.* ¶ 96.)

## Discussion

When ruling on a Rule 12(b)(6) motion, the court must "tak[e] the factual allegations pleaded by the plaintiffs as true and draw[] all reasonable inferences in their favor." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 (7th Cir. 2010). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quotation omitted). A plaintiff's complaint must provide "only a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant "fair notice" of the plaintiff's claims and the basis for those claims. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A dismissal under Rule 12(b)(6) is required if the complaint fails to describe a claim that is "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## I. Unnamed Defendants

Plaintiffs have named as defendants "Staff 1," "Driver 2," "Dispatcher 2" and "Staff 2." Plaintiffs had the opportunity to identify these defendants during discovery but they have failed to do so, and discovery is now closed. Because plaintiffs have failed to amend their complaint to identify these defendants and the docket does not show that summonses as to these individuals were returned executed, the Court dismisses any defendant not specifically named. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007). Therefore, the Court grants defendants' motion to dismiss the Second Amended Complaint as to the unnamed defendants.

## II. Federal Claims

### A. Counts VIII, IX, XV and XVI: Violations of the ADA and the Rehabilitation Act

In Counts VIII and XV, plaintiffs allege that remaining defendants discriminated against them in violation of Title II of the ADA by: (1) failing to provide them with paratransit service that is comparable to the level of service provided to individuals without disabilities; (2) permitting an operational practice that severely limited their access to paratransit services; and (3) failing to provide plaintiffs with equal, meaningful access to paratransit service. In Counts IX and XVI, plaintiffs allege that defendants violated the Rehabilitation Act by denying them the

benefits of, and equal participation in, paratransit service by discriminating against them through acts of harassment and unlawful efforts to deprive plaintiffs of paratransit service. Courts use the same analysis for claims under the Rehabilitation Act and Title II of the ADA.[2] *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *Crosby v. Reg'l Transp. Auth.*, No. 07 C 6235, 2010 WL 2350707, at *2 (N.D. Ill. June 11, 2010).

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 12143 defines discrimination as used in § 12132:

> It shall be considered discrimination for purposes of section 202 of this Act [42 U.S.C.S. § 12132] and section 504 of the Rehabilitation Act of 1973 (29 U.S.C.S. 794) for a public entity which operates a fixed route system (other than a system which provides solely commuter bus service) to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system.

42 U.S.C. § 12143. To state a claim under Title II of the ADA, plaintiff must allege that: "(1) she is disabled as defined under the [ADA]; (2) she is qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) [the defendant] is a public

---

[2] Claims under the Rehabilitation Act additionally require that the defendant be the recipient of federal funds. *See* 29 U.S.C. § 794. Plaintiffs allege that Pace, SCR and CDT operate their paratransit service as programs receiving federal financial assistance. (Second Am. Compl. ¶¶ 128, 171.) Therefore, for the purposes of this motion, the Court will assume that this requirement is met.

entity." *Torrence v. Advanced Home Care, Inc.*, No. 08 C 2821, 2009 WL 1444448, at *3 (N.D. Ill. May 21, 2009) (quotation omitted). The Department of Transportation's regulations also provide requirements for compliance with the ADA. 49 C.F.R. pt. 37.

Defendants argue that because Hale is not disabled, she cannot state a claim under Title II or the Rehabilitation Act. However, in some circumstances, the ADA allows non-disabled individuals to bring claims of discrimination based on their association with disabled individuals. 28 C.F.R. § 35.130 ("A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."); *see, e.g.*, *Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1015 (N.D. Ill. 2002) ("[C]ourts have allowed individuals who have some relationship to a disabled person to assert Title II claims against public entities when the public entity discriminates against that individual based upon the individual's relationship to the disabled person."); *Oak Ridge Care Ctr. v. Racine County*, 896 F. Supp. 867, 872 (E.D. Wis. 1995) (finding that non-disabled individuals may bring claims under Title II based on their association with disabled individuals); *Micek v. City of Chi.*, No. 98 C 6757, 1999 WL 966970, at *3-4 (N.D. Ill. Oct. 4, 1999).[3] Additionally, courts have held that associational discrimination claims may also be brought under the Rehabilitation Act. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 279-80 (2d Cir. 2009).

---

[3] Although courts sometimes discuss associational discrimination in terms of the plaintiff's standing, rather than his failure to state a claim, the *Micek* court stated that the result would likely be the same under either framework, and noted that courts have discussed the two analyses together. 1999 WL 966970, at *3 n.6.

To bring a claim for associational discrimination, the plaintiff must "suffer some specific, separate, and direct injury as a result of his association with the disabled individual." *Micek*, 1999 WL 966970, at \*3. Hale must have been "discriminated against or singled out in a discriminatory way due to [her] association with disabled persons." *See id.* at \*3. An "indirect" injury is not enough. *Id.*

In *Micek*, the court found that the plaintiff did not have a separate injury when he alleged an economic loss resulting from a healthcare insurer's denial of coverage for his hearing-impaired family members. *Id.* The court stated that the plaintiff "suffered an indirect injury as a result of a City coverage policy that neither singled him out nor provided him with different options than those provided to other City employees." *Id.* at \*13-14. In cases where an associational discrimination claim succeeded, "the nondisabled plaintiffs could claim that [they] themselves [were] discriminated against or singled out in a discriminatory way due to their association with disabled persons." *Id.* at \*13.

In this case, Hale alleges that she was discriminated against as a result of her association with French. Hale's injury is not just an indirect result of French's injury because, although Hale was traveling with French, she was also seeking services for herself as French's PCA and was denied those services. Therefore, Hale has sufficiently stated an associational discrimination claim under the ADA and the Rehabilitation Act.

Next, defendants argue that plaintiffs were not denied benefits because of French's disability. Both the ADA and the Rehabilitation Act require defendants to provide a paratransit system that provides comparable benefits to the fixed route system used by individuals without

disabilities and deem a failure to do so discrimination. *See* 42 U.S.C. § 12413; 49 C.F.R. § 37.131 (laying out requirements for paratransit systems); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672-75 (5th Cir. 2004). Plaintiffs allege that they were denied comparable benefits to the fixed route system because on the fixed route system, riders are not driven off the route and left stranded at another location or exposed to extensive, one-on-one interaction with the driver.

Defendants argue that these allegations are insufficient to state an ADA/Rehabilitation Act claim because there is no allegation of discriminatory animus. However, courts have found a viable disability discrimination claim can be stated without an allegation of discriminatory intent on the part of the defendant. *See Melton*, 391 F.3d at 672; *Casas v. City of El Paso*, 502 F. Supp. 2d 542, 552 (W.D. Tex. 2007). One court, for example, found that a paratransit service that charged a disabled person's PCA a fare in the paratransit service system but not in the fixed route system, it had engaged in discrimination "on the basis of . . . disability" in violation of the ADA. *Casas*, 502 F. Supp. 2d at 552.

In this case, plaintiffs allege that defendants discriminated against them by not providing them with a level of service comparable to that of fixed route riders. Viewing the allegations in the light most favorable to plaintiffs for the purposes of this motion, they have alleged that defendants discriminated against both plaintiffs by denying them benefits on the basis of French's disability. Thus, plaintiffs have sufficiently stated a claim under the ADA and the Rehabilitation Act in Counts XIII, IX, XV and XVI.

**B. Count X: Retaliation for the Exercise of ADA and Rehabilitation Act Rights**

In Count X, plaintiffs allege that defendants Pace, CDT and SCR retaliated against them in violation of the ADA and the Rehabilitation Act. Defendants argue that plaintiffs have not stated a claim for retaliation because they have not cited an applicable statute and have not sufficiently pleaded what the retaliation entailed.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." § 12203.[4]

The elements of a retaliation claim under either the Rehabilitation Act or the ADA are: "(I) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel*, 287 F.3d at 148-49 (2d Cir. 2002) (quotations omitted). To be considered "protected activity," plaintiffs must "allege[] facts indicating that [they] opposed any act or practice *made unlawful by the ADA*." *Powell v. Houtsma*, No. 04 C 4831, 2005 WL 464687, at *3 (N.D. Ill. Feb. 25, 2005). Bringing a lawsuit alleging ADA violations is a protected activity. *See Rothman v. City of Chi.*, No. 02 C 3533, 2003 WL 21148180, at *3 (N.D. Ill. May 16, 2003).

---

[4]While the Seventh Circuit has not addressed a retaliation claim under § 12203 outside of the employment context, other courts have recognized such claims. *Torrence*, 2009 WL 1444448, at *6 (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 n.31 (11th Cir. 2003), *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002), *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 816 (6th Cir. 2002) (en banc), and *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999)).

Here, plaintiffs argue that defendants retaliated against them for filing a disability discrimination lawsuit against defendants, expressing public criticism of paratransit management and advocating for the interests of paratransit riders. (Second Am. Compl. ¶ 137.) Plaintiffs allege that defendants knew about their lawsuit prior to the purported retaliation because they were served with the complaint on the same day as the December 19 incident. Plaintiffs allege that after defendants learned of the litigation, Hale was suspended from paratransit service for over a month and because of French's dependence on Hale, Hale's suspension effectively served as a suspension for French as well. Finally, plaintiffs allege a causal connection between their protected activity and the adverse action because they state that Hale's suspension, and consequently French's inability to use paratransit, was a result of their lawsuit and their complaints against defendants. Therefore, plaintiffs have stated a claim for retaliation under the ADA and the Rehabilitation Act against Pace and SCR, and the Court denies defendants' motion to dismiss Count X as to them.

However, the Court grants defendants' motion to dismiss Count X as to CDT because plaintiffs have not alleged any facts to show that CDT's involvement extended beyond the November 23 incident, plaintiffs fail to state a claim against CDT with regard to Count X. Thus, the Court dismisses Count X as to CDT without prejudice.

In addition, the Court grants defendants' motion to dismiss plaintiffs' request for compensatory damages in Count X because they are unavailable to plaintiffs asserting ADA or Rehabilitation Act retaliation claims. *See Kramer v. Banc. of Am. Sec*., 355 F.3d 961, 965 (7th Cir. 2004) (ADA); *N.T. ex rel. Trujillo v. Espanola Pub. Sch.*, No. CIV 04-0415 MCA/DJS, 2005 WL 6168483, at *13 (D.N.M. June 21, 2005) (Rehabilitation Act).

**C. Count XI: § 1983**

In Count XI, plaintiffs sue Pace, CDT and Michael Rogers pursuant to § 1983 for violating their rights under the ADA and the Rehabilitation Act, the equal protection clause of the Fourteenth Amendment, the due process clause of the Fifth and Fourteenth Amendments, the First Amendment, and various provisions of the Illinois Constitution.[5]  To state a claim under § 1983, a plaintiff must allege that:  "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law."  *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004).

Defendants argue they were not acting under the color of state law, but they cite no authority for that argument.  Pace was created by the Illinois legislature when it enacted the Regional Transportation Authority Act and is a municipal corporation.  *See* 70 Ill. Comp. Stat. 3615/3A.01, *et seq.*; *Pace, Suburban Bus Div. of Regional Transp. Auth. v. Regional Transp. Auth.*, 803 N.E.2d 13, 28 (Ill. App. Ct. 2003) ("The Act grants Pace many of the same powers it grants to the RTA (70 ILCS 3615/3A.09 (West 2000)), most notably, the power to sue and be sued . . . .");  *Garcia v. Pace Suburban Bus Serv.*, 955 F. Supp. 75, 76 (N.D. Ill. 1996) ("Pace is a municipal corporation under the Regional Transportation Authority Act.").  Courts in this district have found that other entities created by the Regional Transportation Authority Act are state actors for the purposes of section 1983.  *See, e.g.*, *Apelbaum v. Ne. Ill. Reg'l Commuter R.R.*

---

[5] To the extent that plaintiffs § 1983 claim is based on alleged violations of the Illinois Constitution, the Court grants defendants' motion to dismiss because § 1983 requires a violation of federal law.  *See Flynn v. Sandahl*, 58 F.3d 283, 290 (7th Cir. 1995); *Pesce v. J. Sterling Morton High Sch. Dist.*, 830 F.2d 789, 795 (7th Cir. 1987).

*Corp.*, No. 00 C 7831, 2003 WL 132503, at *14 n.14 (N.D. Ill. Jan. 16, 2003) ("Metra is a public corporation created under the Regional Transportation Authority Act . . . and it does not dispute that section 1983 applies to it."). Therefore, the Court considers Pace to be a state actor for the purposes of § 1983.

Because Pace is a municipal corporation, in order to state a section 1983 claim, plaintiffs must also allege that they have "suffered a constitutional deprivation as a direct result of an official policy, custom, or practice." *Gamble v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 91 C 4857, 1991 WL 281188, at *3 (N.D. Ill. Dec. 31, 1991) (quotation omitted). "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (U.S. 1978). Plaintiffs must allege either:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Apelbaum*, 2003 WL 132503, at *14 (citing *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994)). Additionally, to allege an official policy, plaintiffs must plead "*specific facts* that demonstrate the actual existence of an illegal municipal policy that goes beyond a single alleged incident of wrongdoing." *Gamble*, 1991 WL 281188, at *3.

Plaintiffs have not alleged an official policy or widespread practice. Nowhere have plaintiffs alleged that the challenged actions were the result of an official policy. Rather,

plaintiffs allege that defendants' actions were actually against official policy, as was Rogers' actions in charging them a second fare. (Second Am. Compl. ¶¶ 29-30.)

Plaintiffs have also not alleged that the challenged actions were taken by someone with final policymaking authority. Deciding whether a specific official has final policymaking authority is a question of state law. *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 619 (7th Cir. 2001). Paratransit services are governed by the Suburban Bus Board of the Regional Transportation Authority. *See* 70 Ill. Comp. Stat. 3615/2.30. Plaintiffs do not allege that any of the defendants were on the Board or were delegated policymaking authority by the Board. *See Maldonado v. Metra*, 743 F. Supp. 563, 567 (N.D. Ill. 1990). In sum, plaintiffs have failed to allege that any of the challenged actions were the result of an official policy, a widespread practice or were taken by someone with final policymaking authority. The Court therefore dismisses without prejudice Count XI against Pace.

Plaintiffs have also not stated a viable § 1983 claim against CDT. Assuming, arguendo, that CDT is a state actor because a public function has been delegated to it, *see West v. Atkins*, 487 U.S. 42, 56 (1988); *Cunningham v. Southlake Center. for Mental Health, Inc.*, 924 F.2d 106, 109 (7th Cir. 1991), CDT could be held liable under § 1983 only if its alleged actions were based on an official policy, a widespread practice or taken by someone with final policymaking authority. *See Apelbaum*, 2003 WL 132503, at *14; *Gamble*, 1991 WL 281188, at *3. Because plaintiffs make no such allegations, they have not stated a § 1983 claim against CDT Therefore, the Court dismisses without prejudice Count XI against CDT and Rogers acting in his official capacity as an employee of CDT.

Plaintiffs do not state whether they have sued Rogers in his individual capacity in Count XI. However, because they seek punitive damages under § 1983 that are unavailable against Pace, CDT or Rogers in his official capacity, the Court construes Count XI to be against Rogers in his individual capacity. A liberal reading of the complaint shows that plaintiffs may only sue Rogers in his individual capacity with regard to alleged constitutional deprivations that occurred during the November 23, 2007 incident because that is the only incident in which they allege he was personally involved. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (stating that individual liability under § 1983 requires personal involvement in constitutional deprivation).

Plaintiffs' equal protection claim against Rogers is based, in part, on his alleged violation of the ADA and the Rehabilitation Act. The Seventh Circuit, however, "has consistently declined to find that other similar statutes preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statutory one." *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003); *see, e.g.*, *Torrence*, 2009 WL 1444448, at *7 ("[A] number of district courts in this circuit have held that Section 1983 claims may not rest on the ADA or the Rehabilitation Act."); *Silk v. City of Chi.*, No. 95 C 143, 1996 WL 312074 , at *19 (N.D. Ill. June 7, 1996) ("[T]he comprehensive enforcement schemes adopted by Congress in the ADA and the Rehabilitation Act of 1973 preclude Silk from seeking to enforce a violation of either statute through 42 U.S.C. section 1983."). Plaintiffs clearly allege that "[d]efendants' violations of 42 U.S.C. § 12132 *et seq.* and Section 504 of the Rehabilitation Act . . . establish a cause of action under 42 U.S.C. § 1983 for compensatory damages against Defendants." (Second Am. Compl. ¶ 139.) Because plaintiffs base their § 1983 claim, in part, on violations of the ADA and Rehabilitation Act, they are precluded from seeking to enforce those violations

through § 1983. Thus, to the extent that plaintiffs base their § 1983 claim solely on a violation of the ADA and the Rehabilitation Act, the Court dismisses it with prejudice.

Plaintiffs also allege that Rogers violated their right to equal protection during the November 23, 2007 incident because they complained about his requiring PCAs to pay a fare. To state a cause of action under § 1983 for a denial of equal protection under a class-of-one theory, a plaintiff must allege that: "(1) he was intentionally treated differently than those similarly situated, and (2) there is either no rational basis for the difference in treatment or such treatment was motivated by 'totally illegitimate animus.'" *Messner v. Calderone*, No. 07 C 893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)). Plaintiffs allege that Rogers intentionally discriminated against plaintiffs on November 23, 2007 solely because they had complained about his treatment of Hale on a prior occasion. The Court holds that this is sufficient to state a class-of-one equal protection claim. Thus, to the extent that Count XI seeks to hold Rogers liable in his individual capacity for violating their equal protection rights on a class-of-one theory, the Court denies defendants' motion to dismiss.

### D. Count XII: § 1985 – Conspiracy to Deprive Constitutional Rights[6]

Plaintiffs allege that each of the defendants conspired directly or indirectly to deprive plaintiffs of the equal protection of the law and took actions in furtherance of the conspiracy that caused injury to plaintiffs. Section 1985(3) provides in relevant part: "[i]f two or more persons

---

[6] Plaintiffs entitled Count XII: "42 U.S.C. § 1983." However, under Count XII, plaintiffs ask for relief pursuant to § 1985. To the extent that Count XII is redundant of Count XI, it is stricken. The Court will therefore analyze Count XII as a cause of action under § 1985.

in any state or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."  § 1985(3).  In addition to an allegation of conspiracy, § 1985(3) requires an allegation of "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  *Bowman v. City of Franklin*, 980 F.2d 1104, 1108 (7th Cir. 1992).

A § 1985(3) conspiracy claim cannot be based on alleged animus toward the disabled because § 1985(3) was not enacted to protect against disability-based discrimination.  *D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486-87 (7th Cir. 1985).  To the extent that plaintiffs base their § 1985(3) claim on a classification of disabled persons or paratransit riders, it is dismissed.  The same is also true for any § 1985(3) claim based on a classification of those who complained about Pace management or paratransit services.  *See Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985) (stating that the Seventh Circuit only recognizes "classes based on race, ethnic origin, sex, religion and political loyalty . . . as possibly supporting a Section 1985(3) claim").  Finally, to the extent that plaintiffs base their § 1985 claim on gender-based discrimination, plaintiffs simply do not allege any facts to support that defendants conspired to have Driver 2 discriminate against her based on her gender, which is insufficient to meet the pleading standards of Rule 8.  *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  In sum, plaintiffs have not stated a claim under § 1985.  Count XII is therefore dismissed.

## II.  State Law Claims

### A.  Statute of Limitations

Defendants argue that all of plaintiff's state law claims should be dismissed because they are barred by the one-year statute of limitations for tort claims against governmental entities and their employees.  *See* 745 Ill. Comp. Stat. 10/8-101(a).  However, a complaint does not need to anticipate or overcome affirmative defenses such as the statute of limitations.  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).  Therefore, dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court and "admits all the ingredients of an impenetrable defense."  *Id.*

Plaintiffs have not pleaded themselves out of court.  The first incident on which their claims are based took place on November 23, 2007.[7]  The suit was initially filed in state court on November 24, 2008.  Defendants argue that the statute of limitations expired on November 23, 2008 and the case is time-barred.  However, as plaintiffs point out, November 23, 2008 fell on a Sunday.

The relevant state statute provides that "[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is a Saturday or a Sunday . . . and then it shall also be excluded." 5 Ill. Comp. Stat. 70/1.11. "It is well-established under Illinois law that, if the limitations period expires on a date on which the courts are closed, the period shall be extended to the next business day."  *Bd. of Educ. v. Wolinsky*, 842 F. Supp. 1080, 1084 (N.D. Ill. 1993).  "When a federal court borrows a state's

---

[7] The Second Amended Complaint also discusses an incident that took place on August 25, 2007. However, none of the claims arise from that event.

statute of limitations, it also borrows the applicable tolling and extension provisions, as long as they are not inconsistent with federal law." *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989). Federal Rule of Civil Procedure 6(3)(a) states that if the clerk's office is inaccessible "on the last day for filing . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Federal law is therefore consistent with Illinois law on this issue. Thus, as November 23 was a Sunday, plaintiffs had until November 24, 2008 to file their breach of contract claims. Therefore, plaintiffs' state law claims are not time-barred, and the Court denies defendants' motion to dismiss on this basis.

### B. Count I: False Imprisonment

Plaintiffs allege that they were falsely imprisoned by Pace, CDT and Rogers during the November 23, 2007 incident when Rogers took them to the wrong destination against their wishes. Under Illinois law, false imprisonment is:

> an unlawful restraint of an individual's personal liberty or freedom of locomotion. Imprisonment has been defined as any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go. In order for a false imprisonment to be present, there must be actual or legal intent to restrain.

*Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. App. Ct. 1984) (internal citations and quotations omitted). "In order to establish a cause of action for false imprisonment [the plaintiff] must show that he was restrained or arrested by [d]efendants and that [d]efendants acted without having reasonable grounds to believe that [he] committed an offense." *Rogers ex*

*rel. Rogers v. Cook*, No. 08 C 2270, 2008 WL 5387642, at *3 (N.D. Ill. Dec. 23, 2008) (quotation omitted).

Defendants solely argue that plaintiffs were not restrained, and therefore they were not falsely imprisoned. There are five ways "in which an actor may bring about the confinement required as an element of false imprisonment, including (1) actual or apparent physical barriers; (2) overpowering physical force, or by submission to physical force; (3) threats of physical force; (4) other duress; and (5) asserted legal authority." *Lopez*, 466 N.E.2d at 1311(quotation omitted). "Unlawful restraint may be effected by words alone, by acts alone or both; actual force is unnecessary to an action in false imprisonment." *Id.* (internal citations omitted).

Plaintiffs have sufficiently alleged that they were unlawfully restrained. Hale alleges that she told Rogers to take plaintiffs back to their original location, which he refused to do so, and instead drove them to a location that was not their desired destination. Defendants argue that plaintiffs were not physically restrained in any manner. However, because plaintiffs were in a moving vehicle, there was an effective barrier preventing their escape. *See* Restatement (Second) of Torts § 36 cmt. a (1965) (stating that when one person intends to imprison another, "the other is not required to run any risk of harm to his person . . . in order to relieve the actor from a liability to which his intentional misconduct has subjected him"). The Restatement (Second) of Torts additionally states that "[i]f the actor by force or threats of force, or by exerting legal authority, compels another to accompany him from place to place, he has as effectively confined the other as though he had locked him in a room." *Id.* cmt. c. Because the plaintiffs were in a moving vehicle, they were compelled to accompany Rogers. Therefore,

plaintiffs have sufficiently pleaded a false imprisonment claim, and the Court denies defendants' motion to dismiss Count I against Rogers.

Plaintiffs also bring this count against Pace and CDT. Although plaintiffs do not specifically allege how Pace or CDT falsely imprisoned them, the Court will assume that they are alleging liability based on a theory of respondeat superior. Under the respondeat superior doctrine, an employer is strictly liable for its employee's acts committed within the scope of employment. *Amora v. Metro Ford Sales & Serv.*, 206 F. Supp. 2d 947, 952 (N.D. Ill. 2002) (citing Restatement (Second) of Agency § 219(1)). However, "[i]ntentional torts do not fall within the scope of the doctrine of respondeat superior unless the employee or agent is acting in furtherance (however misguidedly) of his principal's business." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994); *see Gregor v. Kleiser*, 443 N.E.2d 1162, 1166 (Ill. App. Ct. 1982) ("If an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, respondeat superior may lie; however, if the employee acts purely in his own interest, liability under respondeat superior is inappropriate."). In this case, drawing all inferences in favor of plaintiffs for the purposes of this motion, the Court cannot say that Rogers acted solely in his own personal interest with no purpose of furthering Pace or CDT's interests. Therefore, the Court also denies defendants' motion to dismiss Count I against Pace and CDT.

### C. Counts II and XIII: Intentional Infliction of Emotional Distress

Hale alleges that Pace, CDT and Rodgers intentionally caused her great emotional distress during the November 23 and December 19 incidents.[8]  To recover damages for intentional infliction of emotional distress ("IIED") under Illinois law, the plaintiff must establish that:  "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress."  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604-05 (7th Cir. 2006) (quotation omitted).

Defendants argue that plaintiffs have not sufficiently pleaded that the "extreme and outrageous" element.  "Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances."  *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000) (citation omitted).

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities.  Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.  The distress inflicted must be so severe that no reasonable person could be expected to endure it.

---

[8] In Count II, plaintiffs sue Pace, CDT, Rogers, Driver and Dispatcher with regard to the November 23, 2007 incident.  In Count XIII, plaintiffs sue Pace, SCR, Driver 2 and Dispatcher 2 with regard to the December 19, 2008 incident.  Although the Court has dismissed the unnamed defendants, when an employer such as Pace, CDT or SCR is sued under a theory of respondeat superior, "the servant is not a necessary party in an action against the master."  *McCottrell v. City of Chi.*, 481 N.E.2d 1058, 1059 (Ill. App. Ct. 1985) (citations omitted)

*Id.* (quotations omitted). Among the factors to be considered when evaluating whether conduct was extreme and outrageous are: "(1) the power and influence wielded by the harassing party; (2) the likelihood that the threatened action could be carried out; (3) the legitimate reasons one might have for making the offensive statement; and (4) the defendant's awareness of the plaintiff's susceptibility to emotional stress." *Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 885 (N.D. Ill. 2010) (quotation omitted); *see Honaker v. Smith*, 256 F.3d 477, 490-94 (7th Cir. 2001). These factors must be "considered in light of all of the facts and circumstances in a particular case." *Lujano*, 691 F. Supp. 2d at 885.

Plaintiffs allege that on November 23, 2007 Rogers[9] refused to take them to their desired destination and instead took them to a different location and called the police. (Second Am. Compl. ¶¶ 34-42.) They also allege that this event transpired late at night and in cold weather, which further exacerbated the distress Hale felt due to being stranded with her severely disabled son. (*Id.* ¶¶ 12, 58.) Additionally, Hale alleges that she felt great anxiety while waiting for the police to arrive and with regard to whether defendants and the police would take further punitive action against her and her son. (*Id.* ¶¶ 56-58.)

Evaluating this conduct under the factors discussed in *Lujano*, plaintiffs have sufficiently alleged that defendants' conduct was extreme and outrageous. First, Rogers allegedly wielded power over French, a disabled person, and Hale, French's PCA, in a harassing manner by threatening to transport and transporting plaintiffs to a location that was not their desired

---

[9]Plaintiffs also bring a respondeat superior claim against Pace and CDT based on the conduct of the unnamed dispatcher on duty on November 23, 2007. Because plaintiffs allege that the dispatcher affirmatively approved of Rogers' plan to strand them in a deserted location (Second Am. Compl. ¶ 39), prior to his carrying out his plan, the Court treats the dispatcher and Rogers as one for the purposes of this opinion.

destination and calling the police. Second, plaintiffs allege that Rogers did not have a legitimate reason for his actions. Finally, it can reasonably inferred from plaintiffs' allegations that Rogers knew that plaintiffs, a severely disabled individual and his caregiver, were particularly susceptible to emotional distress as a result of their being reliant on paratransit services and stranded in a location that was not near their desired destination or point of origin. Therefore, plaintiffs have sufficiently alleged an IIED claim in Count II, and the Court denies defendants' motion to dismiss Count II as to Rogers, Pace and CDT.

With regard to Count XIII, an IIED claim against Pace and SCR on a respondeat superior theory, Hale alleges that she suffered great anguish when Driver 2 addressed her as "bitch" and ridiculed her "retarded ass son" on December 19, 2008.[10] Hale additionally alleges she experienced great anxiety due to Driver 2's statement that defendants were working together to disqualify plaintiffs from receiving service. Driver 2's calling Hale "bitch" (Second Am. Compl. ¶¶ 81, 84) and referring to French as her "retarded ass son" (*id.*), alone, is not enough to establish a claim for intentional infliction of emotional distress. *See Graham*, 742 N.E.2d at 866 ("[l]iability does not extend to mere insults, indignities, [or] threats.") (quotation omitted).

Driver 2's statement that no one liked the plaintiffs and that SCR and Pace were trying to disqualified them from service also does not rise to the level of "extreme and outrageous" conduct. Again, evaluating this conduct under the four factors discussed in *Lujano*, it is clear that this conduct does not rise to the level of being "extreme and outrageous." *See* 691 F. Supp. 2d at 885. Driver 2 did not threaten to take away service or indicate that he had the power to do so. Thus, this statement gave no strong indication that the discontinuation of service would

[10]*See supra* n.7.

actually occur.  Moreover, even if Driver 2 had no legal reason for his statement or knew that

Hale was susceptible to emotional distress, neither of which plaintiffs allege, the facts, even in

combination, would still not be enough to bring the conduct within the realm of extreme and

outrageous conduct.

Plaintiffs also bring this Count against Dispatcher 2 and Staff 2.  Plaintiffs allege that

Driver 2 called Dispatcher 2 during the December 19 incident, but they do not allege that

Dispatcher 2 had any further involvement in the incident.  Further, plaintiffs have not alleged

that Staff 2 had any involvement at all.  In sum, plaintiffs fail to state a respondeat superior claim

for intentional infliction of emotional distress against Pace or SCR based on the conduct of the

Driver 2, Dispatcher 2 or Staff 2.  The Court therefore dismisses Count XIII without prejudice.

### D.  Counts III and IV:  Defamation

In Count III, plaintiffs sue Rogers for defamation based on his conduct on November 23,

2007, Pace and CDT based on Rogers' allegedly defamatory conduct on November 23, 2007 and

Pace and SCR based on Driver 2, Dispatcher 2 and Staff 2's alleged defamatory conduct on

December 19, 2007.   "A statement is defamatory if it tends to harm a person's reputation to the

extent that it lowers that person in the eyes of the community or deters others from associating

with that person." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007).

To state a claim for defamation under Illinois law, the plaintiffs must allege that:  "a defendant

made a false statement concerning the plaintiff, that there was an unprivileged publication of the

defamatory statement to a third party by the defendant, and that the plaintiff suffered damages as

a result." *Giant Screen Sports v. Can. Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009) (citations omitted).

Defamatory statements may either be defamation per se or defamation per quod. "A statement is defamatory per se if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Muzikowski*, 477 F.3d at 904 (citation omitted). For a statement to be defamation per se, it must fall into one of five categories:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication.

*Id.* (citation omitted). A statement is not per se defamatory if "it is reasonably capable of an innocent construction." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). However, "the innocent construction rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.* at 505. A plaintiff may bring a defamation per quod claim when "the defamatory character of a statement is not apparent on its face and extrinsic evidence is necessary to demonstrate its injurious meaning or where a statement is defamatory on its face but does not fall under one of the categories of statements which are actionable per se." *Maag v. Ill. Coalition for Jobs, Growth & Prosperity*, 858 N.E.2d 967, 975 (Ill. App. Ct. 2006).

Plaintiffs allege that, on November 23, 2007, Rogers and Dispatcher 1 defamed them by telling Chicago police officers and various persons associated with Pace and CDT that plaintiffs violated the law by refusing to pay a fare. Given the context and plain meaning of Rogers and

Dispatcher 1's words, the statements were clearly meant to impute the commission of a crime. Rogers and Dispatcher 1 would otherwise have no reason to call the police and report plaintiffs' alleged conduct. Therefore, plaintiffs have stated a claim against Rogers, Pace and CDT for defamation per se. Therefore, the Court denies defendants' motion to dismiss Count III.

In Count IV, plaintiffs allege that Driver 2 committed defamation per quod by telling various Pace and SCR employees that Hale had refused to pay a fare and was disruptive during the December 19 incident. "A plaintiff bringing a per quod claim must also plead and prove special damages to recover." *Id.*; *Muzikowski*, 322 F.3d at 927 (stating that an itemization of losses or an allegation of "specific damages of actual financial injury" is a "required element" of a claim for defamation per quod); *Robinson v. Morgan Stanley*, No. 06 C 5158, 2008 WL 4874459, at *5 (N.D. Ill. June 18, 2008) ("To allege an action for defamation per quod in federal court, Robinson must plead special damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g).")

Plaintiffs state that the defamatory words alleged in Count IV resulted in Hale's (and effectively French's) suspension from paratransit service. Plaintiffs do not, however, allege that they suffered any pecuniary loss as a result. Thus, they have not pleaded special damages with sufficient particularity. In sum, the Court grants defendants' motion to dismiss Count IV, which is dismissed without prejudice.

### E. Count V: CDT's Negligent Retention, Training and Supervision

Plaintiffs allege that CDT was negligent in retaining, training and supervising Rogers, Dispatcher 1 and other employees and that this negligence caused plaintiffs' injuries with regard to the November 23, 2007 incident.

> An action for negligent hiring or retention of an employee requires the plaintiff to plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.

*Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998).

Plaintiffs allege that CDT was put on notice of Rogers' unfitness for the position when Hale complained that Rogers had made her pay a fare on August 25, 2007 despite her PCA status. Plaintiffs also allege that CDT's negligence retention of Rogers as a paratransit driver caused their injury on November 23, 2007. These allegations, sufficiently state a negligent retention cause of action against CDT.

To establish a claim for negligent training or supervision, the plaintiff must show that "(1) the employer had a duty to train and/or supervise its employees, (2) the employer negligently trained and/or supervised an employee, and (3) the employer's negligence proximately caused the plaintiff's injuries." *Willyard v. Wal-Mart Stores, Inc.*, No. 09CD295-DRH, 2010 WL 487080, at *4 (S.D. Ill. Feb. 8, 2010).

Defendants do not dispute that CDT had a duty to train and supervise its employees. Moreover, plaintiffs allege that: (1) CDT employees attempted to charge Hale a fare despite her

PCA status; (2) a CDT employee stranded them in a location other than their chosen destination; (3) a CDT employee caused the police to question why Hale had not paid the fare; (4) CDT should have known that its employees were not following the correct procedure regarding PCAs because Hale had previously complained about it; and (5) plaintiffs suffered damages as a result. For the purposes of this motion, these allegations are sufficient to state a claim for negligent training and supervision.

### F.  Count VI:  Pace's Negligent Supervision

Plaintiffs allege that Pace was negligent in supervising CDT as its subcontractor because Pace did not ensure that CDT and its personnel were adequately trained in paratransit policies and practices.  Plaintiffs also allege that Pace should have been aware that CDT personnel were not following the appropriate policies because Hale had complained to Pace and CDT that Rogers had required Hale to pay a fare.  Plaintiffs do not expressly allege that Pace had a duty to supervise CDT, or that their negligence in doing so was the proximate cause of plaintiffs' injuries.  However, viewing the complaint liberally and drawing all reasonable inferences in plaintiffs' favor, the Court finds that plaintiffs have sufficiently alleged a claim for negligent supervision.

**G. Counts VII and XIV: Breach of Contract**

Plaintiffs allege that defendants breached their contract with plaintiffs to provide transit services on November 23, 2007 and December 19, 2008.[11] "To state a cause of action for breach of contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. App. Ct. 1990). Plaintiffs allege that when they stepped into the paratransit vehicle they were accepting the defendants' offer to exchange their services for a payment of fare, thus creating a contract, and that defendants breached that contract when they engaged in the behavior discussed above.

Defendants argue that there was no enforceable contract between the parties. However, Illinois law is clear that "a contractual relationship between passenger and carrier begins when the passenger has presented himself at the proper place to be transported with the intention of becoming a passenger and is then either expressly or impliedly accepted by the carrier for transportation." *Burns v. Reg'l Transp. Auth.*, 445 N.E.2d 348, 351 (Ill. App. Ct. 1982), *rev'd on other grounds sub nom. Stack v. Reg'l Transp. Auth.*, 461 N.E.2d 969 (1984)); *see Karkomi v. Am. Airlines, Inc.*, 717 F. Supp. 1340, 1342 (N.D. Ill. 1989) ("Illinois treats the relationship between a passenger . . . and a common carrier . . . as contractual in nature.") (citation omitted)). "A contract arises, therefore, through an offer by a person to be carried, followed by an express or implied acceptance by the transportation facility to carry the person to an agreed upon destination for the current fare." *Burns*, 112 Ill. App. 3d at 351.

---

[11] Count VII involves the November 23 incident. Count XIV involves the December 19 incident.

Both the November 23 and the December 19 incidents, therefore, gave rise to a contract between the parties. Plaintiffs presented themselves at the proper place to be transported with the intention of becoming passengers. Defendants then accepted plaintiffs onto the paratransit vehicle and indicated either an expressed or implied acceptance to carry them to their destination. This is enough to create a contract between the two parties. Although the question of what fare was owed may be at issue, taking all of plaintiffs' allegations as true for the purposes of this motion, the Court assumes that plaintiffs paid a sufficient fare. The question then is whether the complaint alleges that this contract, once established, was breached by defendants.

With regard to the November 23 incident, plaintiffs have sufficiently alleged that the contract was breached. The very basis of their contract was that plaintiffs would be transported to their destination. Instead, plaintiffs were taken to a different destination, and eventually had to be taken home by the police. Plaintiffs have therefore stated a claim in Count VII.

With regard to the December 19 incident, although plaintiffs were eventually taken to their destination, they allege that their contract was breached because of Driver 2's attempt to deprive them of the ride and his other inappropriate conduct as described above. Defendants had a contractual obligation to transport plaintiffs to their destination, which they did. Plaintiffs cite no case law to support their assertion that the contract imposed an obligation on defendants to protect plaintiffs from inappropriate behavior of their employees. *See Karkomi*, 717 F. Supp. at 1342-43 (holding that plaintiffs' allegation that the carrier failed to protect them from abuse from the carriers' employees does not rise to the level of breach of a fiduciary responsibility

necessary to state a claim for breach of contract). The Court therefore dismisses Count XIV without prejudice.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part defendants' motion to dismiss. Dispatcher 1, Staff 1, Driver 2, Dispatcher 2 and Staff 2 are dismissed as defendants. The Court denies the motion as to Counts I, II, III, V, VI, VII, IX, X (as to Pace and SCR only), XI (against Rogers in his individual capacity under a class-of-one theory only), XV, and XVI. The Court grants the motion as to Counts IV, VIII, X (as to CDT only), XI (as to (1) Pace, CDT, Rogers in his official capacity with regard to § 1983 claims based on violations of the ADA and the Rehabilitation Act, as well as First Amendment, equal protection, procedural and substantive due process rights, and (2) Rogers in his individual capacity with regard to § 1983 claims based on violations of the ADA and the Rehabilitation Act), XII, XIII and XIV. These counts are dismissed without prejudice, with the exception of the § 1983 claims based on violations of the ADA and the Rehabilitation Act and the § 1985 claims based on classifications of disability and those who complained about Pace management or paratransit services, which are dismissed with prejudice.

**SO ORDERED**                                    **ENTERED:** March 31, 2011


*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**

**U.S. District Judge**